UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>MARQUEL L. JOHNSON,<br><br>       Defendant. | Case No. 18-CR-182-2-JPS<br><br>**ORDER** |

  Before the Court is Defendant Marquel L. Johnson's ("Defendant") January 2024 letter regarding compassionate release. ECF No. 172. The letter refers to an October 2023 submission to the Court. *Id.*

  As the Court previously explained, the October 2023 submission "attach[ed] copies of several attorney-client communications related to a class action lawsuit filed in the Northern District of California, which charges the warden and correctional officers of FCI Dublin with a number of constitutional violations [(the "Class Action Lawsuit")]." ECF No. 173 at 1. "Because th[ose] submissions are privileged and relate to a pending civil action in another District, the Court did not construe them as a request for compassionate release, nor did it instruct the Clerk of Court to file them publicly on the docket." *Id.* The Court, however, *did* construe the January 2024 letter as a formal request for compassionate release "on the basis of the[] conditions [at FCI Dublin], as well as on the failure of the warden at [Defendant's] current institution, SeaTac FDC, to return his personal property and CPAP machine and to timely administer his medications," and ordered the Government to respond to it. *Id.* at 1–2.

In February 2024, the Government responded to the motion. ECF No. 177.[1] A few weeks later, Defendant filed a notice of appeal of what he erroneously perceived as the Court's denial of the compassionate release motion, ECF No. 179, as well as a reply brief in support of the motion, ECF No. 182. In May 2024, the Seventh Circuit dismissed Defendant's appeal for lack of jurisdiction because the Court had not yet ruled on the compassionate release motion. ECF No. 185 at 1 ("The motion remains pending. As such, now is not the time to appeal."). The motion is therefore now ripe for the Court's review, and for the reasons set forth below, it will be denied. The denial will operate without prejudice as to Defendant's asserted basis for relief based on physical or sexual abuse at FCI Dublin.

1. **PROCEDURAL HISTORY**

In July 2019, Defendant pleaded guilty to five counts of Hobbs Act robbery, one count of attempted Hobbs Act robbery, two counts of brandishing a firearm in relation to a crime of violence, and one count of discharging a firearm in relation to a crime of violence. ECF Nos. 51, 56, 59. In October 2019, the Court sentenced Defendant to a total term of imprisonment of 336 months to be followed by five years of supervised release. ECF No. 75 at 3–4.[2]

In March 2023, the Court granted Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, finding that Defendant's conviction for brandishing a firearm in relation to the

---

[1] The Government also filed a motion to seal its response, which the Court will grant. ECF No. 176.

[2] The judgment and revised judgment in this case erroneously reflect six counts of completed Hobbs Act robbery, rather than five counts of completed and one count of attempted Hobbs Act robbery. ECF Nos. 75, 167. The error is essentially typographical, immaterial for purposes of this Order, and did not affect Defendant's sentence.

attempted Hobbs Act robbery should be vacated in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). ECF No. 148. In August 2023, the Court re-sentenced Defendant to a total term of imprisonment of 252 months to be followed by three years of supervised release. ECF No. 167 at 2–3. Defendant's tentative release date is March 26, 2037.[3]

## 2. LEGAL STANDARD

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must be "extraordinary and compelling reasons warrant[ing] such a reduction." *Id.* § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission" (the "Commission"). *See also United States v. Black*, No. 05 CR 70-4, 2024 WL 449940, at *4 (N.D. Ill. Feb. 6, 2024) ("Congress directed the . . . Commission, in policy statements, to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'") (quoting 28 U.S.C. § 994(t)).

In 2020, the Seventh Circuit held that the relevant policy statement, U.S.S.G. § 1B1.13, was inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir.

---

[3]*See* Fed. Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited July 16, 2024).

2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the . . . Commission has not yet issued a policy statement 'applicable' to [a prisoner's] request."). Therefore, because there was no applicable policy statement, the Seventh Circuit explained that courts have discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement.").

However, November 1, 2023 amendments to § 1B1.13 clarify that, in addition to "expand[ing] the list of specified extraordinary and compelling reasons that can warrant sentence reductions," "the applicability of the policy statement [is extended] to defendant-filed motions . . . ." U.S. SENT'G COMM'N, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* 7, *available at* https://perma.cc/P7TS-LMXQ (last visited July 16, 2024). Thus, it appears that the Seventh Circuit's prior determination of inapplicability of the policy statement will change. *See United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021) ("[*U*]*ntil* the . . . Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction.") (citing *Gunn*, 980 F.3d at 1180–81) (emphasis added).

Nonetheless, the distinction is ultimately academic. Courts retain discretion under the "catchall" provision of § 1B1.13 to find "any other circumstance or combination of circumstances" that are "similar in gravity" to those specifically enumerated in § 1B1.13 to be extraordinary and

compelling bases for release. U.S. SENT'G COMM'N, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* 3, 7 (referring to § 1B1.13(b)(5) as a "catchall" provision); *cf. Gunn*, 980 F.3d at 1180 (holding, prior to November 1, 2023 amendments, that "[t]he substantive aspects of the . . . Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused") (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007) and *Kimbrough v. United States*, 552 U.S. 85 (2007)).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A).

3. ANALYSIS

   3.1 Exhaustion

As a threshold matter, the Government submits that Defendant has not exhausted his instant bases for compassionate release by filing a request relating thereto with the warden of his institution. ECF No. 177 at 6–7. "[T]he exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). Because the Government "properly invoked [Defendant's] failure to comply with § 3582(c)(1)(A)'s exhaustion requirement," and Defendant has not refuted the Government's challenge to his failure to exhaust, Defendant's motion must be denied for this reason alone. *Id.*

### 3.2 Extraordinary and Compelling Circumstances

Even if Defendant had exhausted his instant bases for compassionate release, none of them currently rises to the level of extraordinary and compelling. As pertinent to the bases for release that the Court has construed in Defendant's motion, the amendments to § 1B1.13 detail the following circumstances in which a defendant can be considered for a reduction in his sentence:

For defendants who are victims of sexual or physical abuse, extraordinary and compelling circumstances exist when the defendant "while in custody serving the term of imprisonment sought to be reduced, was a victim of[] . . . sexual abuse involving a 'sexual act' . . . or physical abuse resulting in 'serious bodily injury' . . . that was committed by, or at the direction of, a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody or control over the defendant." U.S.S.G. § 1B1.13(b)(4)(A)–(B). "[T]he misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." *Id.*

Extraordinary and compelling reasons also exist when

The defendant is—

> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B). Similarly, they also exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

The Government construes Defendant's arguments that SeaTac FDC has failed to return his personal property and CPAP machine, as well as failed to timely administer his medications, under § 1B1.13(b)(1). ECF No. 177 at 7. The Government explains that, since the time that Defendant filed his January 2024 letter, Defendant has received his CPAP machine, been issued chest binders, and is currently prescribed both testosterone and medication for anxiety. *Id.* at 7–8 (citing ECF No. 172-1 at 86, 93, 133–36, 138–39, 141, 162, 165). In his reply brief, Defendant does not refute these assertions, focusing instead on his argument pertaining to the conditions at FCI Dublin. ECF No. 182. Thus, the Court finds that these concerns have been resolved and are not extraordinary and compelling bases for relief under § 1B1.13(b)(1).

The Government construes Defendant's arguments regarding the conditions at FCI Dublin under § 1B1.13(b)(4). ECF No. 177 at 8. The Government correctly notes that Defendant does not explain in his motion *which* conditions at FCI Dublin he challenges, referring instead broadly to the Class Action Lawsuit. *Id.*; ECF No. 172-1. The Class Action Lawsuit remains open; indeed, a motion to dismiss was filed in June 2024 and is pending a decision. *See Cal. Coal. For Women Prisoners, et. Al. v. United States of America Fed. Bureau of Prisons, et. Al.*, Case No. 23-CV-4155, ECF 326 (N.D.

Cal. June 18, 2024). The Government explains, however, that Defendant, though not a named plaintiff in the Class Action Lawsuit, may be a member of the class, and that Defendant's medical records reflect incidents of sexual and physical abuse at FCI Dublin. ECF No. 177 at 8–9 (citing ECF No. 177-1 at 10–11).

Nevertheless, Defendant has not supported his motion with proof of a finding or admission of liability in a criminal case, civil case, or administrative proceeding, as required under § 1B1.13(b)(4). Given the pendency of a motion to dismiss in the Class Action Lawsuit, it does not appear that such a finding or admission has been made. Nor has Defendant alleged undue delay or imminent danger so as to excuse the substantiation requirement. In the final analysis, the substantiation requirement is Defendant's burden, and so the Court must deny the motion without prejudice. Defendant may refile the motion on this basis for relief if it is both (1) exhausted with his warden and (2) substantiated by the documentation required under § 1B1.13(b)(4).

### 3.3 The § 3553(a) Factors

Having determined that Defendant has not exhausted his administrative remedies, nor has he presented an extraordinary and compelling reason warranting release, the Court is not required to consider the § 3553(a) factors. *See Thacker*, 4 F.4th at 576 ("*Upon a finding* that the prisoner has supplied [an "extraordinary and compelling"] reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) . . . .") (emphasis added). However, even if Defendant had demonstrated an extraordinary or

Page 8 of 10
Case 2:18-cr-00182-JPS   Filed 07/16/24   Page 8 of 10   Document 186

compelling reason, the Court's application of the sentencing factors to Defendant counsels against early release.

The § 3553(a) factors include the following: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

In this case, Defendant participated in a string of violent[4] armed robberies. At one robbery, Defendant's co-defendant shot a gas station clerk in the head, after which Defendant stood over the victim while he lay on the ground and motioned for his co-defendant to continue the robbery. ECF No. 156 at 12. Days later, Defendant participated in an armed robbery of a taxicab driver, in which he personally brandished and held a firearm to the victim's head and then discharged the firearm before exiting the vehicle. *Id.* at 15. He attempted another armed robbery a few days later, in which he brandished a firearm at another gas station clerk. *Id.* at 16.

Less than a year ago, at Defendant's resentencing hearing, the Court heard updated argument as to the § 3553(a) factors from Defendant and his

---

[4]Violent offenders are statistically more likely to reoffend compared to non-violent offenders. *See Recidivism Among Federal Violent Offenders*, UNITED STATES SENTENCING COMMISSION, *available at* https://perma.cc/T3DU-DTWA (last visited July 16, 2024) ("[O]ffenders who engaged in violent criminal activity—whether during the instant federal offense or as part of prior criminal conduct—generally recidivated at a higher rate, more quickly, and for more serious crimes than non-violent offenders."). Moreover, federal offenders "who were sentenced for a robbery offense . . . stood out among other violent offenders in terms of their rates of recidivism." *Federal Robbery: Prevalence, Trends, and Factors in Sentencing*, UNITED STATES SENTENCING COMMISSION (Aug. 2022), *available at* https://perma.cc/6UBC-R9CX (last visited July 16, 2024).

attorney. ECF No. 166. The Court resentenced Defendant to a total term of 252 months after balancing these factors, and that calculus has not changed. ECF No. 167 at 3. On balance, the Court maintains that releasing Defendant early would not promote—and indeed would undermine—the goals of deterrence, protection of the public, and continued rehabilitation.

## 4. CONCLUSION

Defendant has not exhausted his administrative remedies, nor has he proffered an extraordinary and compelling reason warranting compassionate release. Moreover, the § 3553(a) factors do not support release at this juncture. Therefore, the Court will deny Defendant's motion for compassionate release. The denial will operate without prejudice as to Defendant's asserted basis for relief based on physical or sexual abuse at FCI Dublin.

Accordingly,

**IT IS ORDERED** that Defendant Marquel L. Johnson's request for compassionate release, ECF No. 172, be and the same is hereby **DENIED;** the denial will operate without prejudice as to Defendant's asserted basis for relief based on physical or sexual abuse at FCI Dublin; and

**IT IS FURTHER ORDERED** that the Government's motion to seal, ECF No. 176, be and the same is hereby **GRANTED**; the Government's response, ECF No. 177, shall remain **SEALED** pending further order of the Court.

Dated at Milwaukee, Wisconsin, this 16th day of July, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 10 of 10
Case 2:18-cr-00182-JPS   Filed 07/16/24   Page 10 of 10   Document 186